IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN ANN WERT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY | : | NO. 13-5705 |

<u>MEMORANDUM</u>

**Padova, J.**                                                                                    **April 21, 2015**

Plaintiff Jean Ann Wert filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for disability insurance benefits pursuant to Title II of the Social Security Act.  Pursuant to Local Rule 72.1(d)(1)(C), we referred the case to Magistrate Judge Thomas J. Rueter for a Report and Recommendation ("R&R").  The Magistrate Judge recommended that Plaintiff's Request for Review be denied, and Plaintiff thereafter filed objections to the R&R.  For the reasons that follow, we overrule Plaintiff's objections and adopt the R&R.

## I.      BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 28, 2010, alleging that she had become disabled beginning on September 29, 2009.[1] (R. 28-29, 143-44.)  Plaintiff's date of last insured was December 31, 2013.  (R. 13.)  In her brief in support of her Request for Review, she claims to be disabled due to disorders of the spine, joint dysfunction, obesity, and pain.  Plaintiff was born on June 15, 1949, and when the Administrative Law Judge ("ALJ") issued his decision, she was sixty-three years old.  (R. 20,

---

[1] Plaintiff originally listed April 29, 2008 as her onset date.  At the administrative hearing, her attorney amended her onset date to September 29, 2009.  (R. 28-29, 143.)

143.)   Plaintiff has not worked since April 29, 2008, when she was employed as an administrative assistant.  (R. 28, 53; see also Pl.'s Br. at 2.)

The Commissioner denied Plaintiff's application on December 6, 2010.  (R. 68-71.) Plaintiff filed a Request for Hearing by Administrative Law Judge on December 12, 2010.  (R. 72-74.)   A hearing was held on May 25, 2012, at which Plaintiff and Ms. Beth Kelly, a vocational expert, testified.  (R. 26-59.)   On July 13, 2012, the ALJ issued an Unfavorable Decision, concluding that Plaintiff has not been disabled since September 29, 2009.  (R. 13-20.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since April 29, 2008, and that she had the following severe impairments:  degeneration of the lumbar spine and obesity.  (R. 14-15.)  The ALJ further found that she did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 because Plaintiff retained effective ambulation and did not suffer from nerve root compression.  (R. 15-16.)

The ALJ also found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work but should be limited to work allowing a thirty minute sit/stand option. Specifically, the ALJ found that Plaintiff "ha[d] degeneration of the lumbar spine . . . that . . . resulted in persistent complaints of pain accompanied by persistent findings of spasm, reduced range of motion and trigger points," but that her testimony at the hearing "that she cannot work because she must lie down during the day due to constant pain" was "less than fully credible." (R. 17-18.)  The ALJ also discredited the opinion of Plaintiff's treating orthopedic surgeon, Dr. David Raab, that Plaintiff could not work.  (R. 17-18.)   Finally, the ALJ found that, because Plaintiff was able to perform her past occupation as a secretary, she was not disabled.  (R. 19.)

Plaintiff filed a Request for Review by the Appeals Council on October 10, 2012.  (R. 1-

9.)  In this Request for Review, Plaintiff enclosed, among other medical records, an August 1, 2010 report from Dr. Andrew Harris revealing a positive straight-leg test.  (R. 687-93.)  The Appeals Council denied Plaintiff's request for review on July 30, 2013 (R. 1-4); therefore, the ALJ's decision dated July 13, 2012 is the final decision of the Commissioner.  See Boniella v. Comm'r of Soc. Sec., 390 F. App'x 122, 123 (3d Cir. 2010); 20 C.F.R. § 416.1400(a).

Plaintiff filed the instant action on September 30, 2013.  The instant Request for Review asserts that the ALJ erred as follows:  (1) failing to consider all of the evidence and give controlling weight to the opinions of her treating physicians, specifically, basing his decision on a partial list of exhibits, failing to consider certain medical records, and failing to acquire others; (2) finding that her only severe impairments were degeneration of the lumbar spine and obesity; and (3) failing to properly consider her subjective complaints of pain.

Magistrate Judge Rueter determined that:  (1) the ALJ did not err by not explicitly addressing chiropractic medical records from Dr. Andrew Timar because these records pre-date her September 29, 2009 alleged onset date; (2) the ALJ did not err by failing to obtain chiropractic records from Dr. Robert Livingston and Dr. Harris because it was Plaintiff's burden at the administrative hearing to prove disability at steps one through four and because the ALJ "had no enhanced duty to develop the [administrative] record" since Plaintiff was represented by counsel at the hearing; (3) medical records that were submitted after the ALJ rendered his decision could not be considered in determining whether the ALJ's decision was supported by substantial evidence, and there was no justification for a remand to the Commissioner for consideration of these records; (4) the ALJ did not err by discussing only a portion of the chiropractic records from Dr. Jeffrey Snyder in his decision because "the ALJ need not mention every notation within the voluminous administrative record;" and (5) the ALJ did not err by

3

rejecting Dr. Raab's opinion because it was unsupported by other evidence in the record.  (Id. at 8-17.)  The Magistrate Judge also determined that the ALJ did not err in finding that Plaintiff did not suffer from the severe impairments of major joint dysfunction or spinal disorder because there was substantial evidence to support the ALJ's finding that these claimed impairments fail to satisfy or equal all of the criteria for these impairments.  (Id. at 17-24.)  Finally, Magistrate Judge Rueter determined that the ALJ did not err in discrediting Plaintiff's subjective complaints of pain because these complaints were not supported by evidence in the record.  (Id. at 24-26.)

Plaintiff asserts five objections to the Report and Recommendation.  First, Plaintiff argues that the Magistrate Judge erred in connection with the ALJ's determination at step three that she did not suffer from an impairment that meets or equals listings 1.02 ("Major Dysfunction of a Joint (Due to Any Cause)") or 1.04 ("Disorders of the Spine").  Second, Plaintiff argues that the Magistrate Judge erred in finding that there is substantial evidence to support the ALJ's RFC finding that she can perform sedentary work because the ALJ based his decision on reports from state agency physicians and failed to meaningfully consider reports from Plaintiff's treating physicians.  Third, Plaintiff argues that the Magistrate Judge erred in connection with the ALJ's determination that her complaints of pain were not wholly credible because the ALJ did not adequately consider "the numerous doctors' notes indicating [her] disabling pain."  (Pl.'s Objs. to R&R at 6-8.)  Fourth, Plaintiff argues that the Magistrate Judge erred in finding that the ALJ adequately developed the administrative record and concluding that her case should not be remanded to the Commissioner for further development of the record.  Finally, Plaintiff argues that her case should be remanded for consideration of Dr. Harris's August 1, 2010 report.

## II.    LEGAL STANDARD

Judicial review of the Commissioner's final decision is limited, and the ALJ's findings of

fact will not be disturbed if they are supported by substantial evidence.  Brownawell v. Comm'r of Soc. Sec., 554 F.3d 352, 355 (3d Cir. 2008) (citing 42 U.S.C. § 405(g)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Substantial evidence is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Brownawell, 554 F.3d at 355 (quoting Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003); and citing Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008)).  The ALJ's legal conclusions are subject to plenary review.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999)).

This Court reviews de novo those portions of a Magistrate Judge's report and recommendation to which objections are made.  28 U.S.C. § 636(b)(1).  We may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations.  Id.

## III.    DISCUSSION

### A.    The ALJ's Step Three Findings

Plaintiff argues that the Magistrate Judge erred in connection with the ALJ's determination at step three of the sequential evaluation process that she did not suffer from an impairment that meets or equals listing 1.04 ("Disorders of the spine") or listing 1.02 ("Major dysfunction of a joint(s) (due to any cause)") because substantial evidence supports a conclusion that she does suffer from these impairments.  Step three requires consideration of whether the claimant suffers from an impairment or combination of impairments that meets or equals a listed impairment.  20 C.F.R. § 416.920(a)(4)(iii).  In order to meet the requirements of a listing, the claimant's alleged impairment must satisfy or equal "'"all of the specified medical criteria.'"

Garrett v. Comm'r of Soc. Sec., 274 F. App'x 159, 162 (3d Cir. 2008) (emphasis in original) (quoting Jones v. Barnhart, 364 F.3d 501, 504 (3d Cir. 2004)).   A claimant's impairment medically equals a listed impairment when "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).  "An impairment that manifests only some of th[e] criteria, no matter how severely, does not qualify."  Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (citation omitted); see also Degenaro-Huber v. Comm'r of Soc. Sec., 533 F. App'x 73, 75 (3d Cir. 2013) (affirming district court's affirmance of ALJ's decision that claimant did not meet listing requirements because she had "failed to meet her burden to 'present medical findings equal in severity to all the criteria' of a listed impairment" (emphasis in original) (quoting Sullivan, 493 U.S. at 531)).  It is the claimant's burden to show that she meets or equals the criteria of any given listing.  Brown v. Bowen, 845 F.2d 1211, 1213-14 (3d Cir. 1988) (citing Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987)).

1.    Listing 1.04

Plaintiff argues that the ALJ erred in determining that she did not suffer from an impairment that meets or equals listing 1.04 because substantial evidence supports a conclusion that she does suffer from nerve root compression and that she cannot ambulate effectively. Listing 1.04 includes diagnoses of "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, [and] vertebral fracture" that result in the "compromise of a nerve root . . . or the spinal cord."  20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.  The claimant must also meet or equal one of three additional requirements, two of which arguably apply in the instant case:

> (A) Evidence of nerve root compression characterized by neuro-anatomic
> distribution of pain, limitation of motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness) accompanied by sensory or

reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

. . .

(C) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively . . . .

Id. §§ 1.04(A), (C).

"Inability to ambulate effectively" is defined as "an extreme limitation of the ability to walk, i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and as "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Id. § 1.00(B)(2)(b)(1). To ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living," and "[t]hey must have the ability to travel without companion assistance." Id. § 1.00(B)(2)(b)(2). "[E]xamples of ineffective ambulation include, but are not limited to": (1) "the inability to walk without the use of a walker, two crutches or two canes," (2) "the inability to walk a block at a reasonable pace on rough or uneven surfaces," (3) "the inability to use standard public transportation," (4) "the inability to carry out routine ambulatory activities, such as shopping and banking," and (5) "the inability to climb a few steps at a reasonable pace with the use of a single hand rail." Id. "The ability to walk independently about one's home without the use of assistance devices does not, in and of itself, constitute effective ambulation." Id.

The ALJ concluded, at step two of the sequential evaluation process, that Plaintiff

suffered from the severe impairments of degeneration of the lumbar spine and obesity.  (R. 15.)

At step three, the ALJ determined, after considering obesity as it might affect Plaintiff's lumbar

impairment, that her impairment did not meet or equal the requirements of listing 1.04.  (R. 15-

16.)   The ALJ concluded that Plaintiff had "failed to prove the requirement of nerve root

involvement or spinal stenosis" because:

> the only diagnostic test of the lumbar spine of record, x-rays taken in November,
> 2007, showed degeneration with severe disk space narrowing at L4-5 but without
> any indication of nerve root involvement or stenosis.  Moreover, the record since
> the alleged onset date includes few abnormal clinical examination results that
> might suggest nerve involvement.   The claimant has had findings of spasm,
> trigger points and reduced range of motion but at no time since the alleged onset
> date has she had depressed deep tendon reflexes, decreased sensation, positive
> straight leg testing, antalgic gait, atrophy or muscle weakness (Exhibits 6F, 9F,
> 12F, 14F-17F).

(See, e.g., R. 16, 384, 387, 429-43, 449, 562, 608, 619, 624, 648, 650, 656.)  We note that the

ALJ was incorrect in stating that Plaintiff has had no muscle weakness since her alleged onset

date because medical records from Dr. Jeffrey Snyder show that Plaintiff had moderate muscle

weakness in her right hamstrings after her alleged onset date that decreased over time.  (See, e.g.,

R. 16, 449, 453, 455, 457, 459, 461, 463, 465, 581.)  However, this does not affect the validity of

the ALJ's conclusion that Plaintiff failed to prove nerve root involvement or spinal stenosis

because this conclusion is supported by substantial evidence in the record.   (See, e.g., R. 384,

387, 429-43, 449, 562, 608, 619, 624, 648, 650, 656.)

The ALJ also concluded that Plaintiff "retain[ed] effective ambulation" because "she

maintain[ed] grooming and hygiene, routinely perform[ed] most household chores, shop[ped],

dr[ove], [went] to the library, sw[am] at the pool and [did] not use a cane or other such device for

walking."  (R. 16.)  Indeed, Plaintiff testified at the administrative hearing that she prepares and

heats up food, washes dishes, makes her bed, dusts furniture, can clean the floor with a Dirt

Devil or broom, can clean up spills on her hands and knees, does laundry, goes shopping, takes out the trash, drives, washes herself, can stand for thirty minutes before she needs to sit, and can walk for thirty minutes before she has to stop.  (R. 40-43.)  Furthermore, Dr. Nato Patel reported that Plaintiff:  (1) stated that her "[w]alking remained normal and pain free" and that she "can walk to the normal distance shopping;" and (2) "walked into [his] office with normal gait and station," was not in distress, and was "[a]ble to get on the exam table."  (R. 606, 608.) Moreover, physical therapist Lisa Fogelman repeatedly noted that, although Plaintiff had some difficulty, particularly in doing things for prolonged periods of time, she could bend, lift, twist, sit, drive, stand, walk, stoop, squat, pivot, reach, don and doff jackets, move to the side, grasp, hold, open doors, and turn her car on and off.  (R. 619, 621, 625-37, 639, 658, 664, 668.) Additionally, as the ALJ noted, Plaintiff did not require an assistive device to ambulate.  (R. 16, 617.)  We therefore conclude that the ALJ's finding that Plaintiff retained effective ambulation is supported by substantial evidence in the record.

We further conclude, accordingly, that there is substantial evidence to support the ALJ's conclusion that Plaintiff's impairments fail to meet all of the criteria of listing 1.04 because substantial evidence supports the ALJ's conclusions that Plaintiff did not suffer from nerve root involvement or spinal stenosis and that she retained effective ambulation.  See Garrett, 274 F. App'x at 162-63 (affirming district court's conclusion that substantial evidence supported ALJ's conclusion that claimant's impairments did not meet or equal listing 1.04 when claimant's impairments only met or equaled some of the criteria under listing 1.04).

2.      Listing 1.02

Plaintiff argues that the ALJ erred in determining that she did not suffer from an impairment that meets or equals listing 1.02 because substantial evidence supports a conclusion

that she cannot ambulate effectively.  Listing 1.02 is:

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s).

20 C.F.R. Part 404, Subpart P, App. 1, § 1.02.  Fulfillment of the requirements of listing 1.02 also requires "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively" or "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in ability to perform fine and gross movements effectively."  Id. §§ 1.02(A)-(B).  There is no evidence to support, and Plaintiff does not contend, that a major peripheral joint in each upper extremity is involved (see Pl.'s Br. at 15), so we only address listing 1.02 with respect to whether a major peripheral weight-bearing joint is involved.

The ALJ does not specifically discuss listing 1.02 in his decision.  However, "ALJs need not cite specific Listings at step three as long as the ALJ's review of the record permits meaningful review of the step-three conclusions."  Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121 (3d Cir. 2008) (discussing Jones, 364 F.3d 501); see also Scuderi v. Comm'r of Soc. Sec., 302 F. App'x 88, 90 (3d Cir. 2008) ("[A]n ALJ need not specifically mention any of the listed impairments in order to make a judicially reviewable finding, provided that the ALJ's decision clearly analyzes and evaluates the relevant medical evidence as it relates to the Listing requirements.").  Here, the ALJ concluded that Plaintiff's impairment "[did] not meet the list[ing] criteria contained in . . . Section 1.04," and did not equal any listing section in severity. (R. 16.)  Furthermore, listing 1.02 requires the claimant to show that she cannot ambulate effectively, 20 C.F.R. Part 404, Subpart P, App. 1, § 1.02, and the ALJ concluded, with respect

to listing 1.04, that Plaintiff could in fact ambulate effectively.  (R. 16.)  As we have stated, this conclusion is supported by substantial evidence in the record.  (See, e.g., R. 16, 40-43, 606, 608, 619, 621, 625-37, 639, 658, 664, 668.)  We therefore further conclude that the ALJ's review of the record permits meaningful review of the step-three conclusions, see Lopez, 270 F. App'x at 121, and that the ALJ's determination that Plaintiff does not suffer from any impairment that meets or equals a listing -- including listing 1.02 -- is supported by substantial evidence because substantial evidence supports the ALJ's conclusion that Plaintiff retained effective ambulation.

In light of the foregoing, we conclude that there is substantial evidence to support the ALJ's determination that Plaintiff does not suffer from an impairment that meets or equals a listing because substantial evidence supports the ALJ's conclusions that Plaintiff does not suffer from nerve root compression or spinal stenosis and retains effective ambulation.

B.      The ALJ's RFC Determination

Plaintiff argues that the Magistrate Judge erred in concluding that there is substantial evidence to support the ALJ's RFC finding that she can perform sedentary work because the ALJ based his decision on reports from state agency physicians and failed to meaningfully consider reports from Plaintiff's treating physicians.  Specifically, Plaintiff argues that "[s]ince her onset date of September 29, 2009 through 2012, [her] medical records from Dr. Snyder (chiropractor), Dr. Raab (orthop[edic] surgeon) and Dr. Fogelman (doctor of physical therapy) all have clear evidence of [her] disabling pain and inability to lift, sit, stand or walk to meet the requirements of sedentary work."  (Pl.'s Objs. to R&R at 6.)

Patrick Scott, the state agency medical consultant, determined that Plaintiff could perform medium work, based on an assessment by Dr. Patel, the state agency medical examiner. (R. 17, 54, 612, 616-17.)  The ALJ concluded, however, that Plaintiff could not perform medium

work and limited Plaintiff to "sedentary work allowing a 30-minute sit/stand option" because she "has degeneration of the lumbar spine, perhaps aggravated by obesity, that has resulted in persistent complaints of pain accompanied by persistent findings of spasm, reduced range of motion and trigger points" and because "she might [therefore] be unable to lift 20 pounds and otherwise meet the demands of light work."  (R. 17-18.)  In arriving at this conclusion, the ALJ considered Mr. Scott's opinion but only relied on it to the extent that it supported his findings. (Id.)  Accordingly, the ALJ did not, as Plaintiff suggests, fully base his decision on reports from state agency physicians.

Plaintiff's treating physician, Dr. Raab, completed a "Physical Capabilities Statement" regarding Plaintiff on May 11, 2011, in which he concluded that she was unable to perform even sedentary work.  (R. 680-81.)  On December 22, 2011 and February 29, 2012, Dr. Raab opined that Plaintiff was "totally disabled from performing her previous occupation," but that she was not "totally disabled" from working in some other capacity.  (R. 683, 685.)  He further opined that Plaintiff could only:  (1) work twenty hours per week; (2) sit, stand, or walk for one hour each per day; and (3) perform sedentary work involving occasional lifting of less than five pounds.  (Id.)  The ALJ considered Dr. Raab's medical opinions as follows:

> Although Dr. Raab qualifies as a treating source, I find his opinions unconvincing in light of the [other] evidence [in the record].  As noted . . . , the only diagnostic testing available, dating back to 2007, did not indicate nerve root involvement or stenosis and clinical examinations have resulted in persistent findings only of spasm, reduced range of motion and trigger points, which in themselves do not suggest the inability to complete a work day.  Moreover, Dr. Raab offered no statement of reasons in support of his opinions other than to check boxes on a form and cite diagnoses.  The record also does not indicate that Dr. Raab has any special training or expertise in assessing ability to work or that he knows and understands the Agency's definition of inability to work.  Finally, statements that a claimant is disabled or unable to work are not medical opinions; rather, such issues are reserved to the Commissioner . . . .  I therefore do not rely on these unsupported opinions.

(R. 17-18 (footnote omitted).)  In his decision, the ALJ does not specifically mention any reports generated by Dr. Snyder or Dr. Fogelman.

"Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'"  Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987); and 20 C.F.R. § 404.1527(d)(2)). However, "an ALJ may reject a treating physician's opinion on the basis of contradictory medical evidence and 'may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided.'"  Sternberg v. Comm'r of Soc. Sec., 438 F. App'x 89, 97 (3d Cir. 2011) (quoting Plummer, 186 F.3d at 429).  The ALJ must explain why he credited some medical evidence but not other results and must "consider[] all of the evidence and give a reason for discounting the evidence he rejected."  Johnson v. Barnhart, 66 F. App'x 285, 288-89 (3d Cir. 2003) (citing Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir. 1994); and Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000)).

As the ultimate decisionmaker regarding RFC decisions, the ALJ was not required to adopt any of Dr. Raab's conclusions bearing on Plaintiff's RFC.  See Chandler v. Comm'r of Soc. Sec., 667 F.d 356, 361 (3d Cir. 2011); see also Brown v. Astrue, 649 F.3d 193, 196 n.2 (3d Cir. 2011) ("The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.").  Instead, the ALJ was tasked with explicitly considering and evaluating all of the relevant evidence in the record, which he did, and we conclude that his review was consistent with his responsibilities under the regulations and case law.  See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).  When considering how Plaintiff's impairments affected her RFC, the ALJ considered Dr. Raab's conclusions along with the rest of the evidence

13

of record, including Plaintiff's own testimony and her medical records.  (See, e.g., R. 15-18, 40-43, 384, 387, 394, 398, 429-43, 445, 447, 449, 562, 573, 575, 577, 579, 608, 619, 621, 624, 648, 650-51, 656.)  For example, the ALJ noted that the November 2007 x-ray -- the only diagnostic testing of record -- did not support Dr. Raab's assessment that Plaintiff is unable to work because, although it indicated severe disc space narrowing, it did not indicate nerve root involvement or stenosis.  (R. 17, 656.)  We conclude that the ALJ could therefore discredit Dr. Raab's opinion because it was not supported by objective medical findings.  See Rimel v. Astrue, 521 F. App'x 57, 59 (3d Cir. 2013) (stating that ALJ properly discredited a doctor's opinion that was not supported by any medical documentation).

Furthermore, Plaintiff testified that she can stand for thirty minutes before she needs to sit and can walk for thirty minutes before she has to stop, both of which are consistent with the ALJ's determination that she could perform "sedentary work allowing a 30-minute sit/stand option." (R. 18, 40-43.)  Moreover, a form report in which a physician must only check a box or fill in blanks -- like the one Dr. Raab completed when he determined that Plaintiff could perform medium work (R. 680-81, 683-86) -- is "'weak evidence at best.'"  Colavito v. Apfel, 75 F. Supp. 2d 385, 389 (E.D. Pa. 1999) (quoting Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993) (remaining citations omitted)).  This is therefore not a case in which "we 'cannot tell if significant probative evidence was not credited or simply ignored.'"  See Fargnoli, 247 F.3d at 42 (quoting Burnett, 220 F.3d at 121).  We therefore conclude that substantial evidence supports the ALJ's decision to discredit Dr. Raab's opinion that Plaintiff could not work.

Additionally, while the ALJ's RFC analysis does not specifically mention the medical records that Dr. Snyder and Dr. Fogelman generated with respect to Plaintiff, the ALJ explicitly considered these medical records in arriving at his step three conclusion that Plaintiff's

impairment did not meet or equal the requirements of a listed impairment, which we previously concluded was supported by substantial evidence, and the ALJ explicitly incorporated his step three analysis into his RFC analysis.  (R. 16, 18-19.)  Specifically, at step three, the ALJ relied upon these records to conclude that, although Plaintiff "has had findings of spasm, trigger points and reduced range of motion," "at no time since the alleged onset date has she had depressed deep tendon reflexes, decreased sensation, positive straight leg testing, antalgic gait, atrophy or muscle weakness."  (R. 16.)  Then, in assessing Plaintiff's RFC, the ALJ stated that he arrived at his conclusions regarding Plaintiff's work limitations as a result of her "degeneration of the lumbar spine, perhaps aggravated by obesity, that has resulted in persistent complaints of pain accompanied by persistent findings of spasm, reduced range of motion and trigger points."  (R. 18.)  Moreover, the ALJ stated that, in rendering his decision, he "fully consider[ed] all the evidence, including any exhibits not cited in th[e] opinion."  (R. 13, 16.)  Because the ALJ explicitly referenced his analysis of the records generated by Dr. Snyder and Dr. Fogelman with respect to his RFC assessment, we conclude that this is not a case in which "we 'cannot tell if significant probative evidence was not credited or simply ignored.'"  See Fargnoli, 247 F.3d at 42 (quoting Burnett, 220 F.3d at 121).  Indeed, there is "no requirement that the ALJ discuss in [his] opinion every tidbit of evidence included in the record," Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004), and a claimant's case should not be remanded to the Commissioner when substantial evidence supports his conclusion, even if he failed to explicitly address a certain report.  See Mays v. Barnhart, 227 F. Supp. 2d 443, 449 (E.D. Pa. 2002), aff'd, 78 F. App'x 808 (3d Cir. 2003).

        In light of the foregoing, we conclude that the ALJ meaningfully reviewed the records generated by Plaintiff's treating physicians Dr. Raab, Dr. Snyder, and Dr. Fogelman, and that

substantial evidence supports the ALJ's RFC finding that Plaintiff can perform sedentary work. We therefore overrule Plaintiff's objection that the Magistrate Judge erred in concluding that the ALJ properly considered the opinions of Plaintiff's treating physicians with respect to assessing her RFC and that the ALJ's RFC finding is supported by substantial evidence.

      C.    <u>The ALJ's Credibility Finding Regarding Plaintiff's Subjective Complaints</u>

      Plaintiff argues that the Magistrate Judge erred in failing to find that the ALJ improperly declined to consider her testimony regarding the pain she experiences because the ALJ did not adequately consider "the numerous doctors' notes indicating [her] disabling pain." (Pl.'s Objs. to R&R at 6-8.) Plaintiff argues, in effect, that the Magistrate Judge erred in finding that there is substantial evidence to support the ALJ's RFC finding that she can perform sedentary work because the ALJ did not properly assess Plaintiff's testimony regarding the symptoms of her various medical conditions that she claims render her disabled.

      The Social Security Act establishes that:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . .

42 U.S.C. § 423(d)(5)(A). Social Security regulations further provide that a strong indication of the credibility of a claimant's statements is their consistency, internally, and with other information in the record.[2] SSR 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996). Indeed, a claimant's testimony regarding subjective complaints is entitled to great weight when supported

---

[2] The Social Security Commission's substantive regulations have the force of law because they have been "authorized by Congress and promulgated by [that] agency to implement a statute." <u>United States v. Walter Dunlap & Sons, Inc.</u>, 800 F.2d 1232, 1238 (3d Cir. 1986) (citing <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281, 302 n.31 (1979)).

by competent medical evidence.  Williams v. Sullivan, 970 F.2d 1178, 1186 (3d Cir. 1992) ("[S]ubjective complaints must be substantiated by medical evidence." (citing 42 U.S.C. § 423(d)(3))); see also Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (stating that subjective complaints must be given "serious consideration" (citation omitted)); Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979).

Plaintiff testified at the administrative hearing that she can sit for thirty minutes before she must stand up; she was in less pain than she had been in previously; and she felt pain in her right sacroiliac joint going down through her right knee.  (R. 43-45.)  She further testified that she had pain on her left side, and that if she attempts to do something that she is not able to do, for example, "pushing, pulling or lifting too much," she feels pain.  (R. 45-46.)  Plaintiff also testified that even when she is "just sitting in the most comfortable way that [she] can, [doing] no activity," she still feels some pain and numbness.  (R. 46.)  She initially testified that lying on her back helps ease her pain, but that she does not lie down during the day and only does that in the bathtub.  (R. 46-47.)  However, she later testified that she does lie down during the day, but only when she is in pain, and that she lies down for relatively brief periods of time to do activities like reading the newspaper and balancing her checkbook.  (R. 55-57.)  Finally, Plaintiff testified that she could not do a sedentary job with a thirty-minute sit/stand option because she "would just end up in pain."  (R. 51-52.)

Plaintiff maintains that her subjective complaints are consistent with the medical evidence in the record.  Specifically, Plaintiff relies on several medical records that she claims corroborate her complaints:  (1) records generated by Dr. Snyder documenting her complaints and showing that she was treated for pain that became aggravated by activities of daily living, such as housework and driving, and weather changes (see, e.g., R. 437, 475, 485, 575); and (2)

records generated by Dr. Fogelman stating that Plaintiff's "[p]ain is getting worse as she is not able to keep her joint in place" and that Plaintiff "has difficulty with any prolonged standing, sitting, steps [and] any unilateral activity" (see, e.g., R. 620, 622, 624-26).  Accordingly, Plaintiff argues that there is no inconsistency between her complaints and the medical evidence.

The ALJ determined that Plaintiff's complaints about her pain were "less than fully credible" and "credit[ed] her testimony only to the extent that the medical evidence support[ed] it." (R. 17.)  In making this determination, the ALJ relied on the following evidence.  First, he considered treatment notes since Plaintiff's alleged onset date and concluded that these notes did not confirm Plaintiff's testimony "that she cannot work because she must lie down during the day due to constant pain" because they do not show that Plaintiff had "reported lying down or that she needs to lie down." (R. 17, 55-57.)  Indeed, although these treatment notes indicate that Plaintiff experienced pain, they do not indicate that she had to lie down to manage her pain. (See, e.g., R. 437, 475, 485, 575, 620, 622, 624-26.)  Second, the ALJ considered the "diagnostic tests and examination findings" of record and concluded that they did "not indicate any nerve compromise or stenosis." (R. 17.)  Indeed, although the records indicate that Plaintiff has had findings of spasm, trigger points, and reduced range of motion and has experienced pain during examinations, at no time since the alleged onset date has she had findings of nerve compromise or stenosis. (See, e.g., R. 384, 387, 429-43, 449, 562, 608, 619, 624, 648, 650, 656-57.)  Finally, the ALJ found that the fact that Plaintiff does not take any pain medication was inconsistent with her contention that she must lie down during the day to manage her pain. (R. 17, 46, 617.)

The ALJ therefore acknowledged Plaintiff's pain and adopted almost all of Plaintiff's stated work-related limitations and declined only to credit her claim that she cannot perform sedentary work with a thirty-minute sit/stand option because she must lie down. (See R. 51-52,

55-57.)  We therefore conclude that the ALJ did not, as Plaintiff contends, fail to consider her complaints about her pain.  We further conclude that the ALJ "properly considered [Plaintiff's] testimony, weighed it against conflicting evidence in the record, including medical evidence, and specified his reason for rejecting [her] subjective complaints of pain," and that there is substantial evidence to support the ALJ's finding that Plaintiff's subjective complaints of pain were not fully credible  See Harkins v. Comm'r of Soc. Sec., 399 F. App'x 731, 735 (3d Cir. 2010) (stating that "an ALJ may . . . reject a claim of disabling pain where he 'consider[s] the subjective pain and specif[ies] his reasons for rejecting these claims and support[s] his conclusion with medical evidence in the record'" (quoting Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir. 1990))).  We also conclude, accordingly, that the RFC limiting Plaintiff to sedentary work with a thirty-minute sit/stand option adequately accounted for any related functional limitations.

In light of the foregoing and because the ALJ's determination of Plaintiff's RFC was supported by substantial evidence, we overrule Plaintiff's objection that the Magistrate Judge erred in finding that the ALJ properly credited her subjective complaints of pain.

D.     The ALJ's Development of the Administrative Record

Plaintiff argues that the Magistrate Judge erred in finding that the ALJ adequately developed the administrative record.  Specifically, Plaintiff argues that:  (1) the ALJ did not ensure that the administrative record contained an August 1, 2010 report from Dr. Harris, Plaintiff's treating chiropractor, even after the ALJ "was made aware by Plaintiff that there was an evidentiary gap in [the] record;" and (2) the ALJ "failed to fill the evidentiary gaps where Plaintiff's prior counsel neglected to supply records pertinent to her case and of which the ALJ was made aware by Plaintiff."  (Pl.'s Objs. to R&R at 2-3.)  Plaintiff asks that we remand this

19

case for the development of "a full and fair record of [her] condition in assessing her claim for disability benefits," but does not specifically explain how Dr. Harris's report would have affected the ALJ's decision.  (Id. at 3.)

"Because of the inquisitorial nature of Social Security proceedings, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" Carmichael v. Barnhart, 104 F. App'x 803, 805 (3d Cir. 2004) (quoting Sims v. Apfel, 530 U.S. 103, 111 (2000)).  Although an ALJ's duty to develop the administrative record "is most acute where the claimant is unrepresented," Turby v. Barnhart, 54 F. App'x 118, 122 (3d Cir. 2002), the ALJ has a duty to fully and fairly develop the administrative record even when the claimant is represented by counsel.  Boone v. Barnhart, 353 F.3d 203, 208 n.11 (3d Cir. 2003) (citations omitted).  "The ALJ's only duty in this respect is to ensure that the claimant's complete medical history is developed on the record before finding that the claimant is not disabled."  Money v. Barnhart, 91 F. App'x 210, 215 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)). "Such a history is defined as records of the claimant's medical sources for at least 12 months preceding when the claimant filed the application for disability benefit[s] unless the claimant states that his or her disability began less than 12 months before the application was filed."  Id. at 215-16 (citing 20 C.F.R. §§ 404.1512(d), 416.912(d)).  "Only if the evidence before the Commissioner is insufficient does the ALJ have the duty to attempt to obtain additional evidence to determine whether a claimant is disabled."  Id. at 216 (citing 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3)).  Accordingly, "[a]n ALJ does not have a duty to search out all relevant evidence that might be available, but an ALJ 'shall inquire fully into the matters at issue and shall receive in evidence the testimony of witnesses and any documents which are relevant and material.'"

Burton v. Astrue, Civ. A. No. 07-2227, 2008 WL 2890952, at *11 (E.D. Pa. July 24, 2008) (quoting Hess v. Sec. of Health Educ. & Welfare, 497 F.3d 837, 840 (3d Cir. 1974)).

Nonetheless, "[t]he burden lies with the claimant to develop the record regarding . . . her disability because the claimant is in a better position to provide information about . . . her own medical condition." Money, 91 F. App'x at 215 (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); and 20 C.F.R. §§ 404.1512(a), 416.912(a)).  "'[A] claimant represented by counsel is presumed to have made his best case before the ALJ.'" Vivaritas v. Comm'r of Soc. Sec., 264 F. App'x 155, 158 (3d Cir. 2008) (quoting Skinner v. Astrue, 478 F.3d 836, 842 (7th Cir. 2007)). "The onus is therefore on counsel to ensure that the ALJ is aware of all of the evidence favorable to a claimant's case and to probe all of the relevant issues." Harrison v. Colvin, Civ. A. No. 14-719, 2014 WL 5148156, at *4 (W.D. Pa. Oct. 14, 2014) (citing Turby, 54 F. App'x at 122-23).

Plaintiff was represented by counsel from July 11, 2011 through the administrative hearing that was held on May 25, 2012.  (R. 26, 82.)  Because Plaintiff was represented by counsel at the administrative hearing, the ALJ had no enhanced duty to develop the administrative record. See Turby, 54 F. App'x at 122; see also Smith v. Harris, 644 F.2d 985, 989 (3d Cir. 1981) ("Particularly where the claimant is unrepresented by counsel, the ALJ has a duty to exercise 'a heightened level of care' and 'assume a more active role.'" (quoting Dobrowolsky, 606 F.2d at 407)).  Counsel "was [therefore] responsible for ensuring that the ALJ was aware of any facts favorable to [Plaintiff's] claim for benefits." See Turby, 54 F. App'x at 122-23 (citing 20 C.F.R. § 404.1740(b)(1)).

Despite counsel's and Plaintiff's responsibility to ensure that the ALJ was aware of facts favorable to Plaintiff's disability claims, neither of them made the report of Plaintiff's treating chiropractor, Dr. Andrew K. Harris, part of the record before the ALJ rendered his decision, even

though Plaintiff mentioned at the hearing that Dr. Harris had done an x-ray in 2010 and the ALJ specifically asked Plaintiff's counsel whether that report was in the record.  (R. 48-49.)  Indeed, at the end of the administrative hearing, the ALJ asked counsel whether he had additional evidence to submit, and counsel responded that he "d[id] not have any additional evidence" (R. 59).  See Harrison, 2014 WL 5148156, at *4 ("[A] case should generally not be remanded for further development of the record if a claimant's attorney 'affirmatively submits to the ALJ that the record is complete' and the case is ripe for disposition" (quoting Maes v. Astrue, 522 F.3d 1093, 1098 (10th Cir. 2008))).  Furthermore, neither Plaintiff nor counsel sought the ALJ's assistance in obtaining medical evidence from any providers.  Moreover, counsel was certainly aware of his ability to submit evidence into the administrative record, and there is no indication from the record that Plaintiff or counsel encountered any difficulty obtaining records.  Indeed, counsel submitted evidence into the record until the day before the administrative hearing and confirmed, at the ALJ's request, that he had looked through the exhibit file.  (R. 29.)

We conclude that the ALJ fulfilled his duty to develop the administrative record, and that it was counsel and Plaintiff who ultimately failed to satisfy their burden of developing the record regarding Plaintiff's disability.  See Money, 91 F. App'x at 215 (citing Bowen, 482 U.S. at 146 n.5); Harrison, 2014 WL 5148156, at *4.  Indeed, Plaintiff was represented by counsel who never asked the ALJ to keep the record open so that he could obtain Dr. Harris's report and make it part of the administrative record, and who stated that he had no additional evidence to submit (R. 59).  See Lemon v. Colvin, Civ. A. No. 14-562, 2015 WL 418430, at *2 (W.D. Pa. Feb. 2, 2015) (concluding that ALJ had fulfilled his duty to develop record when:  (1) treatment records were potentially missing from record; (2) claimant was represented by counsel; (3) "at no time did counsel seek to secure them, submit them, or request to keep the record open to obtain them

at a future date and supplement the record;" (3) claimant's counsel stated at the hearing that all known recent medical records had been submitted or requested; and (4) claimant's counsel informed ALJ, upon his asking, that there were no other exhibits); see also Harrison, 2014 WL 5148156, at *5 (concluding that ALJ satisfied duty to develop record when:  (1) claimant was represented by counsel; (2) "ALJ should have been on notice of the possible existence of [records that were not in the administrative record] because claimant listed [certain medical provider] as one of her health care providers in her application materials and testified about her . . . therapy during the administrative hearing;" and (3) attorney never alerted the ALJ of the potential importance of these records and twice confirmed that the record could close and did not need to be supplemented).

Furthermore, the ALJ "conducted a full hearing and thoroughly reviewed the medical evidence, reports, and testimony."  Glenn ex rel. Norfleet v. Comm'r of Soc. Sec., 67 F. App'x 715, 719 (3d Cir. 2003).  Indeed, the ALJ spent a great deal of time questioning Plaintiff about her condition and invited her to include any additional evidence in the record (R. 59).  See Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996) (stating that ALJ satisfies duty when he "question[s] the claimant about [her] medical condition, ask[s] about [her] ability to perform various tasks and daily activities, and invite[s] the claimant to include anything else in the record" (discussing James v. Bowen, 793 F.2d 702, 704-05 (5th Cir. 1986)).  Moreover, although Dr. Harris's August 1, 2010 report constitutes a medical record generated within the twelve-month period before Plaintiff filed her application for disability benefits on September 28, 2010 (R. 143-44, 687), the evidence that was before the Commissioner was not insufficient because there was other medical evidence -- records generated by another chiropractor, Dr. Snyder -- in the administrative record from the twelve-month period before Plaintiff filed her application for

disability benefits (R. 384-85, 491, 550).  See Money, 91 F. App'x at 215-16 (stating that ALJ must ensure that administrative record contains some evidence from claimant's medical sources for at least twelve months preceding when claimant filed application for disability benefits, and that "[o]nly if the evidence before the Commissioner is insufficient does the ALJ have the duty to attempt to obtain additional evidence to determine whether a claimant is disabled" (citing 20 C.F.R. §§ 404.1512(d), 404.1527(c)(3), 416.927(c)(3), 416.912(d))).

Because the ALJ fulfilled his duty to develop the record, we overrule Plaintiff's objection to the Magistrate Judge's determination that the ALJ fulfilled this duty, and we decline to remand this case to the Commissioner for further development of the record.

E.    Dr. Harris's Report

Plaintiff also seeks a remand to the Commissioner for consideration of Dr. Harris's report, which did not become part of the administrative record until Plaintiff submitted it to the Appeals Council.[3]  (See R. 687-93.)  Evidence that was not before the ALJ may serve as a basis for a remand.  42 U.S.C. § 405(g).  The United States Court of Appeals for the Third Circuit has instructed that a plaintiff who seeks a remand on the basis of evidence that was not part of the record before the ALJ must establish that:  (1) the evidence is new; (2) the evidence is material; and (3) she had good cause for failing to present that evidence to the ALJ.  Matthews v. Apfel, 239 F.3d 589, 594-95 (3d Cir. 2001).

Dr. Harris's August 1, 2010 report states that, at an examination on June 2, 2010, Plaintiff reported "aching and numbing pain" in her left hip, right buttock, and neck that "occurs between

---

[3] To the extent that Plaintiff argues that the ALJ's decision was not supported by substantial evidence as a result of gaps in the administrative record, evidence that was not part of the record before the ALJ "'cannot be used to argue that the ALJ's decision was not supported by substantial evidence.'"  Matthews, 239 F.3d at 594-95 (quoting Jones v. Sullivan, 954 F.2d 125, 128 (3d Cir. 1991)).

one fourth and one half of the time when she is awake, and <u>precludes carrying out</u> activities of daily living." (R. 687-88 (emphasis in original).) Plaintiff further reported that: (1) she could put on and tie her shoes and take out the trash "without much difficulty" (R. 688); (2) she could bathe, shower, wash her hair and face, brush her teeth, put on pants, prepare meals, eat, clean dishes, do the laundry, and use the restroom "without difficulty" (<u>id.</u>); and (3) she experienced pain with respect to doing recreational activities and functional activities, such as carrying large objects (R. 688-89). Based upon his examination, Dr. Harris concluded, *inter alia*, that Plaintiff had an antalgic gait, apparently favoring the right side, and that Plaintiff experienced slight, moderate, or severe pain when he palpated the left and right suboccipital, paracervical, thoracolumbar, and iliolumbar muscle groups and the upper thoracic and mid thoracic muscle groups. (R. 689, 692.) Dr. Harris's examination also revealed a positive straight-leg result on Plaintiff's left side, as well as positive results for a variety of other orthopedic tests. (R. 691.) Plaintiff argues that Dr. Harris's report is new and material, and that she had good cause for failing to submit it into the administrative record before the ALJ rendered his decision.

Assuming *arguendo* that Dr. Harris's report is new and material, Plaintiff did not have good cause for failing to submit the report earlier. The burden of establishing good cause rests with the claimant, <u>Matthews</u>, 239 F.3d at 595, and this element requires the claimant to show "some justification" or "good reason" for failing to submit the evidence. <u>See, e.g.</u>, <u>Szubak v. Sec'y of Health & Human Servs.</u>, 745 F.2d 831, 834 (3d Cir. 1984) (some justification); <u>Matthews</u>, 239 F.3d at 595 (good reason). Plaintiff, through her current counsel, appears to assert both that Plaintiff's previous attorney was at fault for failing to make the report part of the administrative record, and that the ALJ was at fault for failing to ensure that the report become part of the record. Specifically, Plaintiff states that the ALJ asked her attorney whether that

report was in the administrative record, yet neither Plaintiff nor her counsel submitted the report into the record before the ALJ when he rendered his decision.  (R. 48-49.)  She further states that she "was not asked to produce these records at the hearing" and "was [not] aware that she could even produce such records on the day of the hearing or even shortly thereafter."  (Pl.'s Objs. to R&R at 2-3.)  Plaintiff also states that it was "unbeknownst to [her] as to why her prior [c]ounsel did not have [Dr. Harris's records]," but that she "was in possession of these records on the date of the hearing as she was assisting her Worker's Compensation attorney in getting Dr. Harris paid for his treatments."  (Id. at 3 & n.1.)

Both Plaintiff and her prior counsel were on notice of the evidence they needed to present in order to establish her disability, for example, that her impairment or combination of impairments met or equaled a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  While Plaintiff asserts that she had the report in her possession at the time of the hearing, it is clear that she did not ask counsel to submit the report prior to the close of the administrative record, and counsel never sought leave to submit the report.  Cf. Cooper v. Astrue, Civ. A. No. 10-1694, 2011 WL 240177, at *4 n.48 (E.D. Pa. Jan. 26, 2011) (concluding that good cause existed for failure to submit documents when claimant's "attorney was clearly seeking leave to submit it" before the administrative record closed) (citing Hamm v. Astrue, Civ. A. No. 08-5010, 2009 WL 2222799, at *7 (D.N.J. July 22, 2009))).  Indeed, there is no good cause for failure to submit records to the ALJ when a claimant's attorney is on notice before the hearing of what he needs to show to meet a particular listing's requirements because "presenting such evidence [i]s part of his affirmative duty" and "remanding th[e] case for these records would merely serve to 'eliminate [the claimant's] responsibility to present her case for disability before the Secretary.'" Edwards v. Astrue, 525 F. Supp. 2d 710, 713 (E.D. Pa. 2007) (citations omitted)).  Furthermore,

26

"even if [counsel] was not aware of the [report] in time to submit [it] to the ALJ, claimants, themselves, have a duty to exercise reasonable diligence to present the Secretary with all of the evidence relevant to their claim." Ford v. Barnhart, Civ. A. No. 06-0220, 2006 WL 3589046, at *2 (E.D. Pa. Dec. 8, 2006) (citations omitted) (concluding that no good cause existed for this reason). We therefore conclude that Plaintiff has failed to meet her burden of establishing good cause, and we decline to remand this case to the Commissioner for consideration of Dr. Harris's report.

## IV.    CONCLUSION

For the reasons stated above, we overrule each of Plaintiff's objections to the Magistrate Judge's Report and Recommendation.

BY THE COURT:


/s/ John R. Padova
John R. Padova, J.

27